# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 24-cr-436 (TSC)** |
| v. | : | |
| | : | |
| MARK CHRISTIAN WROBLEWSKI, | : | |
| | : | |
| Defendant | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Mark Wroblewski has pleaded guilty to two second-degree misdemeanors: a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One), and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Wroblewski to 36 months' probation on Counts One and Two with three months home detention as a condition of that probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I.    Introduction

Defendant Mark Wroblewski, a forty-four-year-old male, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer

1

of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Wroblewski pleaded guilty pursuant to a plea agreement to violations of 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G).

The Court must consider that Wroblewski's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. However, while Wroblewski's conduct on January 6 was serious, the government recommends a more lenient sentence due to Wroblewski's serious health conditions that require extensive and regular treatment, his candor with the FBI's investigation into his conduct, and his quick and complete acceptance of responsibility for his criminal actions that culminated in his guilty plea to these offenses.

Here, the facts and circumstances of Wroblewski's crimes support a sentence of 36 months' probation in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.       Factual and Procedural Background

*The January 6, 2021, Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 16 at ¶¶ 1-7.

*Defendant Wroblewski's Role in the January 6, 2021, Attack on the Capitol*

On or about January 5, 2021, Wroblewski flew from Los Angeles, California to Washington, D.C. On January 6, Wroblewski attended the "Stop the Steal" rally. He listened to former President's Trump speech from around the Washington Monument and then marched with other protestors, including an individual known to Wroblewski and identified herein as Person 1, toward the West Front of the U.S. Capitol.

As Wroblewski approached the U.S. Capitol Building, he observed, among other things, rioters scaling the walls of the Capitol Building and rioters climbing on a media tower. He also observed police using various crowd control measures to try to prevent rioters from breaching the Capitol Building. Wroblewski and Person 1 climbed a wall on the exterior of the Capitol Building as the riot was ongoing.

After climbing the wall, before entering the U.S. Capitol, Wroblewski personally saw rioters fighting with police officers.  At approximately 2:56 p.m., Wroblewski and Person 1 entered the U.S. Capitol through the entrance located at the northwest Courtyard. Wroblewski and Person 1 exited through the same door at approximately 2:58 p.m.  *See* Figure 1.

 

*Figure 1*: *Wroblewski (circled in red) entering at 2:56 p.m. (left) and exiting at 2:58 p.m. (right)*

At approximately 3:06 p.m., Wroblewski reentered the U.S. Capitol Building through the Senate Wing Door from the Northwest Courtyard. As he entered, an alarm was audible and there was broken glass on the floor. *See* Figure 2.



*Figure 2: Wroblewski (circled in red) entering the Senate Wing Door at 3:06 p.m.*

Wroblewski proceeded through the Capitol Building and entered multiple Senate office rooms that were overtaken by rioters, including the office of Senator Jeffrey Merkley. Senator Merkley's office was ransacked before and/or while Wroblewski was in the office. *See* Figure 3.



*Figure 3: Wroblewski (circled in red) in Senator Merkley's Office.*

Wroblewski remained in various areas of the Capitol Building, including the Memorial Door, the House Wing Door Hallway, and the North Crypt, as police tried to control the riot. *See* Figure 4.



*Figure 4: Wroblewski (circled in red) in S-145.*

Wroblewski exited the Capitol building through the Senate Wing Door at approximately 3:14 p.m., about eight minutes after his reentry.

*Defendant's Interview and Other Comments*

Wroblewski was interviewed by the FBI following his arrest on July 21, 2024. During the interview, Wroblewski said he was guilty of going to the United States Capitol and that his conduct was captured on camera. Wroblewski stated that he was absolutely there. He told interviewing agents that he knew the "whole time" he was there that he shouldn't have been on the Capitol grounds.

Also on July 21, 2024, during his transportation after his arrest, when informed that the United States District Court for the District of Columbia issued an arrest warrant relating to January 6, 2021, he stated he was "guilty . . . I was there."

At all times during his arrest, transport, and interview, Wroblewski was cooperative and compliant with the FBI's requests. Of note, he identified himself in multiple photos, identified Person 1 in multiple photos, provided a voluntary interview, agreed to sign a Notice to Appear (required due to medical clearance requirements causing him to miss an initial appearance immediately following his arrest), and appeared, as ordered, later the following morning without incident.

*The Charges and Plea Agreement*

On September 26, 2024, the United States charged Wroblewski by a two-count Information with violating 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). On October 22, 2024, pursuant to a plea agreement, Wroblewski pleaded guilty to both counts of the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

III.    **Statutory Penalties**

Wroblewski now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Wroblewski faces up to six months of imprisonment and a fine of up to $5,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.    **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a term of 36 months' probation, largely due to Wroblewski's serious medical issues.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Wroblewski's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Wroblewski, the absence of violent or destructive acts is not a mitigating factor. Had Wroblewski engaged in such conduct, he would have faced additional criminal charges.

Wroblewski's conduct was serious. He climbed a wall on Capitol grounds during the riot as part of his effort to get to the Upper West Terrace. Once there, he entered the Capitol Building not once, but twice. And, during his second, longer foray into the Capitol Building through the Senate Wing Door, he proceeded to numerous sensitive and critical locations within the Capitol, including offices of senators, conference rooms, the Crypt, the Memorial Door, and the House Wing Door Hallway. He did this in the context of the larger riot, lending his presence to the mob in each location without regard for the fact that his presence, like the riot generally, was disrupting and endangering congresspeople, staff, and police officers who were sheltering, evacuating, or trying to control and eject the riot, respectively.

Accordingly, the nature and the circumstances of this offense weigh in favor of incarceration, although the government recommends a non-custodial sentence in light of the other Section 3553(a) factors, including Wroblewski's characteristics described below.

### B. Wroblewski's History and Characteristics

As documented throughout the PSR, the defendant has serious health conditions that militate in favor of the government's recommendation. *See, e.g.*, PSR, at ¶¶ 43-45. The Government notes, however, that many of these conditions were present during his travel to and participation during the events of January 6, 2021.

Wroblewski has a history of criminal conduct and interactions with law enforcement, as set forth in the PSR. *See* PSR ¶¶ 26-36. In particular, he has convictions for DUI (*id*. at ¶ 27), disturbance of the peace (*id*. at ¶ 28), driving without a license (three times, *id*. at ¶¶ 29, 30, and 36), and driving at an unsafe speed (*id*. at ¶ 30). His most recent conviction was in 2015. *Id*. Numerous other charges associated with these convictions are detailed in the PSR, as are arrests for battery and false imprisonment with violence. *Id*. at ¶ 35.

Nonetheless, the unique nature of Wroblewski's exceptionally poor health supports leniency and justifies a sentence of probation in this matter.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic

processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant weighs in favor of a term of probation with a period of home detention.  Wroblewski's physical condition has deteriorated since the events of January 6, 2021, and his acceptance of responsibility and overwhelming feeling of guilt over his contribution to the disgraceful events of that day, justify a more lenient sentence than would otherwise be appropriate.  To be clear, Wroblewski's conduct was odious and callous: he entered the Capitol twice and invaded sensitive areas without pause or care for the lives and welfare he was endangering.  In other circumstances—were Wroblewski's health not gravely compromised or his remorse not as clear—a sentence of incarceration would be appropriate. But given the unique circumstances of this case, the need for specific deterrence weighs in favor of a probationary sentence with a period of home detention.

**E.  The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[2] This Court must sentence Wroblewski based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Wroblewski has pleaded guilty to Counts One and Two of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol. A defendant's entry into a sensitive space, such as the Senate Floor or a member's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

In *United States v. Derek Jancart and Erik Rau*, 21-cr-148 (JEB) and 21-cr-467 (JEB), the defendants pled guilty to misdemeanor charges of 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in the Capitol building) in connection with penetrating the Capitol building all the way to the

Speaker's Conference Room. Judge Boasberg sentenced each defendant to 45 days of incarceration.

Like Jancart and Rau, Andrew Ericson went to the Speaker's Conference Room; he posed for a selfie there, as well as for as a photograph resting his feet on the conference table. Judge McFadden imposed a sentence of 20 days' imprisonment, discussing the defendant's entry into an office as follows: "That's a private area and your violation of that space suggests a certain brazenness and intentionality that requires consideration in your sentence. You could have caused a very dangerous and fearful scene had the speaker or her staff been present in the office when you and others entered it." *United States v. Andrew Ericson*, 1:21-cr-506 (TNM)*, Tr. 12/10/21 at 21. Judge McFadden concluded that entering offices put Ericson in a "different category" than people "who were only in areas that would normally be open for tours." *Id.*

In *United States v. Matthew Mazzocco*, 21-cr-54 (TSC), the defendant pled guilty to a misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating or picketing in a Capitol Building) in connection with spending time inside the Spouse's Lounge of the Capitol, and this Court sentenced the defendant to 45 days of incarceration.

Like each of the defendants in *Jancart and Rau*, *Ericson*, and *Mazzocco*, Wroblewski penetrated deep into the Capitol Building, into offices and conference rooms, among other sensitive locations.  By choosing to enter he placed himself, as Judge McFadden said, in a "different category" of rioter, and a greater degree of punishment and deterrence is appropriate as a result.

That said, other rioters' sentences support the more lenient sentence recommended here by the Government. For example, Felipe Marquez, who also entered Senator Merkley's office, received a sentence of 18 months of probation with a condition of three months' home detention.

*United States v. Marquez,* 21-cr-136 (RC). Judge Contreras, explained that Marquez's documented mental-health issues had a "significant influence" on his sentence, and believed that probation would best allow Marquez to receive mental-health treatment. *Marquez,* Tr. 12/10/21 at 32, 34, 37. So too here: Wroblewski's extensive medical treatment needs and concomitant health issues place the same "significant influence" on his sentence, as recognized by the Government's recommendation in this case.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

### V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Wroblewski must pay $500 in restitution, which reflects in part the role Wroblewski played in the riot on January 6.[4] Plea Agreement at ¶ 10. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Wroblewski's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 69.

## VI.    Fine

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

The defendant's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G) subject him to a statutory maximum fine of $5,000.00 per count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, Wroblewski has not shown an inability to pay, *see* PSR at ¶ 51, thus pursuant to the considerations outlined in 18 U.S.C. § 3572(a), the Court has authority to impose a fine.

Under 18 U.S.C. § 3572(a), courts shall consider:

(1) The need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) Any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) The burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) Any restitution or reparation that the defendant has made or is obligated to make;

(5) Any collateral consequences of conviction including civil obligations arising from the defendant's conduct;

(6) Whether the defendant previously has been fined for a similar offense;

(7) The expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and

(8) Any other pertinent equitable considerations.

*See* 18 U.S.C. § 3572(a).

Here, Wroblewski has not shown an inability to pay. See PSR at ¶ 51. Thus, pursuant to the considerations outlined in 18 U.S.C. § 3572(a), the Court has authority to impose a fine.

**VII.    Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Wroblewski to 36 months' probation with a condition of three months of home detention on Counts One and Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Wroblewski's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime and the unique circumstances of this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Patrick Holvey*
PATRICK HOLVEY
DC Bar No. 1047142
Assistant United States Attorney
601 D Street NW
Washington, DC
(202) 252-7224
Patrick.Holvey@usdoj.gov